## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

————————————————————— :
LINDA HOGAN,                        :
            PLAINTIFF,      :          Docket No.:
                         :
v.                                  :
                         :
LIFE CARE CENTERS OF AMERICA,       :
INC., d/b/a/ THE HIGHLANDS, and     :
CARLOS BONILLA,                     :
                   DEFENDANTS.    :
—————————————————————

## COMPLAINT AND JURY DEMAND

### Nature of the Case

1.  This is an action for declaratory judgment, permanent injunctive relief and damages for injuries to Plaintiff as a result of Defendants' unlawful employment practices in violation of the Family & Medical Leave Act (hereinafter the "FMLA"), the Americans with Disabilities Act (the "ADA"), the Age Discrimination in Employment Act ("ADEA"), the Massachusetts Fair Employment Practices Act ("M.G.L. c. 151B"), and the anti-retaliation provisions of the Massachusetts Workers' Compensation Act ("M.G.L. c. 152").

### The Parties

2.  Ms. Hogan was as an employee of Defendants within the meaning of the FMLA, the ADA, M.G. L. c. 151B and M.G.L. c. 152 at all times described in this Complaint and Jury Demand ("Complaint").

3.      Upon information and belief, Defendant Life Care Centers of America, Inc., d/b/a/ The

Highlands ("Highlands"), is a foreign corporation. Ms. Hogan worked at the Highlands'

335 Nichols Road, Fitchburg, Massachusetts, Suffolk County location.

4.      Defendant Life Care Centers of America, Inc., d/b/a/ The Highlands at all times described

in this Complaint was Ms. Hogan's employer within the meaning of the FMLA, the

ADA, M.G.L. c. 151B and M.G.L. c. 152.

5.      Defendant Carlos Bonita is the Executive Director of the Highlands and was Ms. Hogan's

supervisor. He is still working for Defendant Highlands as Executive Director. Upon

information and belief, he is in his twenties and resides in Suffolk County.

6.      Defendant Carlos Bonilla at all times described in this Complaint was a person within the

meaning of the M.G.L. c. 151B.

## Jurisdiction and Venue

7.      Federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331.

8.      Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 28

U.S.C. § 1367.

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that all parties

reside in and a substantial part of the events or omissions giving rise to the claims

occurred in Worcester County, Massachusetts.

10.     On or about April 18, 2019, the Plaintiff filed a proper and timely charge of

discrimination with the Massachusetts Commission Against Discrimination ("MCAD"),

which charge was cross-filed the Equal Employment Opportunity Commission

("EEOC").

11.     Plaintiff notified the MCAD and the EEOC that she would be removing her case and filing in federal court. The MCAD issued a dismissal, on or about September 6, 2019. The EEOC issued a dismissal, on or about September 10, 2019. Those dismissals are attached hereto as Exhibit A.

12.     All administrative and jurisdictional prerequisites to suit have been satisfied.

**Facts**

13.     Ms. Hogan is 63 years old.

14.     Ms. Hogan suffered a work injury that resulted in Chondromalacia of the right patella and patellar tendinitis of the right knee, which resulted in a permanent limp and frequent pain. These conditions rise to the level of a handicap/disability and/or serious medical condition under the law. Alternatively, Defendants viewed her as having a handicap and disability under the law.

*Ms. Hogan's Exceptional Work History with The Highlands*

15.     Ms. Hogan has been a Certified Activity Director for the past 28 years, as well as a Certified Dementia Care Practitioner.

16.     She began working for Defendant the Highlands about November 19, 2014 as the Activity Director.

17.     In 2017, Ms. Hogan was awarded the Team Spirit award. This is a prestigious award.

18.     Prior to June 30, 2018, Ms. Hogan had never been subjected to discipline and was an employee in good standing.

*Ms. Hogan's Disabilities/Handicaps/Serious Medical Condition,*
*Notice to Defendants and Protected Activities*

19.     On or about June 30, 2018, Ms. Hogan was injured in the course of her duties.

20.     While transporting a resident in a wheelchair down a steep ramp into the main living
        area, the wheelchair accelerated. When she pulled back to slow it down, she heard a pop
        in knee and felt immediate pain. Ms. Hogan brought the resident safely into the living
        room.

21.     After leaving the living room, Ms. Hogan reported the injury to Nursing Supervisor
        Nicole Delodge and Defendant Bonilla, and completed an incident report.

22.     Ms. Hogan then went to the UMASS Memorial HealthAlliance Hospital in Leominster,
        Massachusetts. She was outfitted with a total knee immobilizer and crutches. She was
        advised to follow-up with her doctor and an orthopedic doctor.

23.     On or about July 2, 2018, Ms. Hogan returned to the workplace to meet with Dawn
        Mason, Business Office Manager, to provide medical paperwork and report her work-
        related injury. Ms. Hogan also reported the injury to the Workers' Compensation
        company.

24.     The Highlands' Assistant Director of Nursing Tracy Joyce required Ms. Hogan to take a
        drug test.

25.     By the time the paperwork was ready, Ms. Hogan's right knee was swollen, and she was
        unable to walk out of the building. A coworker brought her a wheelchair and Ms. Hogan
        was assisted out of the facility seated in the wheelchair. She completed her Workers'
        Compensation claim.

                                    *Family & Medical Leave Act*

26.     On or about July 6, 2019, Jennifer Abare, Human Resources/Pay Roll, sent Ms. Hogan
        Family and Medical Leave Act (FMLA) forms to complete. Ms. Abare stated it was the
        Highlands policy that an employee out on Workers' Compensation must also be on

                                              4

approved FMLA leave, which would also protect her job. Ms. Hogan completed the forms and submitted them to the employer.

27.   Ms. Hogan was placed on approved FMLA leave effective June 30, 2018.

28.   Ms. Hogan's right knee had been in a total knee immobilizer, she was still using crutches, and non-weight bearing, which was restricting her movement. Ms. Hogan was unable at that time to straighten her right leg or bend her right knee without pain.

29.   On July 18, 2018, orthopedic surgeon Dr. Katzen recommended Ms. Hogan continue with crutches, utilize a patella support brace and participate in physical therapy. He also ordered a follow up visit in four weeks. Dr. Katzen's office also sent information to Dawn Mason at the Highlands.

30.   On or about July 25, 2018, Ms. Hogan was evaluated for physical therapy. She continued physical therapy as well as using a knee brace and one crutch.

31.   On or about August 7, 2018, the Massachusetts Department of Industrial Accidents sent Ms. Hogan a request to extend the employer's payment without prejudice period.

32.   Ms. Hogan's leg continued to improve slightly during the day but worsened at night. She continued her home exercises, elevating her leg and using ice/heat several times a day.

33.   On or about August 20, 2018, Ms. Hogan's doctor provided a cortisone shot. The driving restriction was slightly less restrictive; however, Ms. Hogan was still not allowed to drive to work. A follow-up was scheduled for September 17, 2018. All medical documentation was sent to Dawn Mason at the Highlands.

34.   On or about August 20, 2018 Ms. Hogan called Defendant Bonilla to inform him she needed another month of leave, would see the Orthopedic Doctor on September 17, 2018

and would be continuing with physical therapy. Defendant Bonilla inquired about when she could return. Ms. Hogan explained she was not cleared to work or drive to Fitchburg.

35.     Defendant Bonilla pressured her to return asking her to take the bus.

*Notice of Ms. Hogan's Intent to Return to Work in September & Her Replacement Is Hired*

36.     On or about August 20, 2018 Ms. Hogan also called Dawn Mason to provide a leave and condition update. Ms. Hogan explained she needed another month of leave and the Doctor's office will be faxing the employer information. Ms. Hogan told Ms. Mason she had not been released to drive.

37.     Ms. Mason suggested Ms. Hogan take a train from Worcester, MA to Fitchburg, MA. Ms. Hogan explained this was not a feasible option as she would need to take cabs from both locations and she was not released to work. Ms. Mason then suggested Ms. Hogan take only a cab. The cost of a cab would be cost prohibitive.

38.     Ms. Hogan had informed Defendants of her intent to return to work.

39.     On or about September 7, 2018, the Highland's Regional CEO Zo Long called an all-staff meeting and announced to all facility staff that Carlos Bonilla would be the permanent Executive Director and that Lajja Lantigua had been hired as the Interim Activity Director.

40.     Ms. Lantigua previously worked as Activity Director and now worked in her own consulting business Rock Consulting Solutions, LLC.

41.     Ms. Lantigua completed her orientation only a few days prior to Ms. Hogan's return from leave.

42.     Upon information and belief, Ms. Lantigua is in her thirties.

43.     On or about September 17, 2018, Dr. Katzen provided Ms. Hogan a letter releasing her to work with modified duty effective September 17, 2018. Ms. Hogan's restrictions

included, no squatting, no lifting over 35 pounds, no pushing or pulling activities, and a requirement that Ms. Hogan wear a knee brace while at work. He stated Ms. Hogan could drive without restrictions. Dr. Katzen's office sent this notice to Lyndsay McKean, Gallagher Basset, and Dawn Mason at the Highlands.

44.     That same day, Ms. Hogan spoke with Dawn Mason regarding the release to work and the letter sent to her by Dr. Katzen.

45.     Dawn Mason stated a modified duty plan would have to be written with Elizabeth Wilson, safety person for the Highlands before Ms. Hogan could return.

46.     Later that afternoon, Dawn Mason called Ms. Hogan and said the note from Dr. Katzen was unacceptable as they could not determine if he wrote that Ms. Hogan could not lift over 35 pounds or that Ms. Hogan could not lift over 75 pounds due to his handwriting. Ms. Hogan told Dawn Mason that Dr. Katzen used the job description to write the note, so he was referencing the requirement to be able to lift 35 pounds.

47.     Ms. Mason alleged Defendants were trying to get Ms. Hogan back to work before September 20, 2018.

48.     On or about September 18, 2018, Dr. Katzen forwarded to Defendants a typed note indicating the restriction was on lifting more than 35 pounds. Dawn Mason left Ms. Hogan a message that she received Dr. Katzen's note.

*Discrimination, Harassment & Retaliation*

49.     On or about September 19, 2018, Defendant Bonilla called Ms. Hogan. Ms. Hogan asked him if she could return to work the next day. He responded that while Ms. Hogan could return to work, there were some restrictions. He said they would discuss the restrictions and complete paperwork on the September 20, 2018.

50.    During this call, Ms. Hogan also asked if she would be reinstated, and why Ms. Lantigua was hired as Interim prior to her expiration of her Family and Medical Leave. Defendant Bonilla raised his voice and chastised Ms. Hogan that she was getting into this too much. Defendant Bonilla stated Defendants were not going to just let Ms. Lantigua go since she gave up a position to come to the Highlands.

51.    Ms. Hogan again asked him to confirm in writing that Ms. Hogan would have her job back once she returned to full duty. This time he stated he would have to talk to Dawn Mason about that. When Ms. Hogan stated Ms. Lantigua owned her own consulting business and consulted with other facilities, Defendant Bonilla ended the call.

52.    On or about September 20, 2018, Ms. Hogan had a meeting with Defendant Bonilla and Director of Nursing Wayne Nasiatka attended as a witness at Defendant Bonilla's request. Defendant Bonilla stated he was investigating (1) a change in the resident calendar; and (2) that Ms. Hogan spoke to her staff while she was on leave.

53.    The change in the calendar occurred in June 2018. Defendants had an opportunity for a special event. Ms. Hogan thought this would help a new resident adjust. Ms. Hogan scheduled the performance and canceled Bingo.

54.    The event was a big hit with the residents, and was attended by residents from the subacute unit, memory care unit and both long-term units.

55.    Only one resident complained that Bingo had been moved.

56.    Events are often moved to accommodate unique events, staffing issues, resident health issues and weather.

57. Ms. Hogan told Defendant Bonilla that she thought the change in the calendar was resolved in June. Defendant Bonilla then reviewed Ms. Hogan's limitations for modified duty that was sent from Elizabeth Wilson (safety person) at the corporate office.

58. Ms. Hogan again asked if she will be returned to Activity Director once she was off modified duty, which Defendant Bonilla agreed to put in writing. He again discussed that Ms. Lantigua was hired as in interim Activity Director.

59. Defendant Bonilla stated Ms. Hogan would be reporting to Ms. Lantigua and let her manage the Activity Department.

60. Ms. Hogan questioned why she would be reporting to Ms. Lantigua, since the only restriction is that Ms. Hogan could not transport/escort residents. Ms. Hogan could perform all other duties. Defendant Bonilla insisted that Ms. Hogan would be reporting to Ms. Lantigua. He stated she would be in the facility two or three days a week, and when Ms. Lantigua was not Ms. Hogan would be under the direction of Kristi Mendoza, Alzheimer's Dementia Care Unit. He further stated that if Ms. Lantigua or Ms. Mendoza did not have work for Ms. Hogan, she could work in another department, such as Laundry. Eventually when Ms. Hogan asked for confirmation in writing, he stated he needed to check with Dawn Mason, Business Office Manager.

61. Ms. Hogan met with Dawn Mason and asked if Defendant Bonilla could confirm in writing that Ms. Hogan would have her job back, and Ms. Mason stated she had nothing to do with that. She stated that working in other departments is standard for those returning light duty. Ms. Hogan provided her physical therapy schedule upon request.

62. Ms. Hogan was taken out of the payroll system and blocked from the IT system while on leave.

63.   Ms. Lantigua would ignore Ms. Hogan on occasion. She provided Ms. Hogan a task list that included assignments from Ms. Mendoza. Ms. Hogan completed the assignments to the best of her ability.

64.   On or about September 21, 2018, Defendant Bonilla informed Ms. Hogan that she would be reporting to him rather than Ms. Lantigua. He stated Ms. Lantigua and Ms. Hogan would be co-managers of the Activity Department.

65.   Again Ms. Hogan asked him to put in writing that she would be returned to her position once she was able to resume her full duties. He stated he would talk to Ms. Mason about it when she returned to work and that Ms. Hogan could look up State Law regarding Workers' Compensation.

66.   As one of the assigned tasks, Ms. Hogan called the family of a resident for an update. Ms. Hogan was not informed a resident had died. This caused distress to the family and embarrassment to her.

67.   Defendant Bonilla did not arrange the meeting with Ms. Mason or provide the requested written promises or job description.

68.   On or about September 24, 2018, Ms. Lantigua came into the office and began interrogating Ms. Hogan about staffing issues, departmental supply issues, as well as budget and purchasing issues that occurred while Ms. Hogan was on leave. She questioned Ms. Hogan's qualifications of an Activity Director. She began to berate Ms. Hogan and talk down to her saying that as the Activity Director Ms. Hogan should know these things.

69.     Ms. Hogan learned later that day from an Activity Department staff person that she had

        not been invited to a scheduled meeting with the Activity Department, including

        Defendant Bonilla, Ms. Lantigua and Activity Staff.

70.     Ms. Lantigua summoned Ms. Hogan to meet with her in the Chapel area. She instructed

        Ms. Hogan not to talk to Activity Staff and to direct them to her. She further stated that

        Ms. Hogan was not to add any input to conversations. She stated that she be the one

        supervising the staff. Ms. Hogan was shocked as this was not what Defendant Bonilla had

        indicated to her and Ms. Lantigua was only supposed to have covered Ms. Hogan's leave

        of absence.

71.     On or about September 25, 2018, Ms. Lantigua instructed Ms. Hogan to move her

        materials to the MDS Office and that there was no need for Ms. Hogan to be in the

        Activity Office.

72.     Ms. Hogan was not allowed to go to the units and question residents in order to complete

        resident assessments, so Ms. Lantigua performed that task.

73.     That day Ms. Lantigua invited Ms. Hogan to the Activity Department Meeting. At the

        meeting, she began describing changes in the Activity Department. She asked the

        Activity Assistants how long it took them to complete the Resident Activity Participation

        Sheets. Ms. Hogan explained that the sheets were lengthened as a correction for a State

        Survey deficiency and a Quality Assurance for the department. Ms. Lantigua talked over

        Ms. Hogan, and both her and Defendant Bonilla stated the forms would revert to the prior

        one-page sheet.

74.     On or about September 26, 2018, Ms. Hogan asked Defendant Bonilla to set up a meeting

        with Greg Byrne, Corporate Divisional Human Resources. He attempted to direct Ms.

11

Hogan to Ms. Mason or to wait. Ms. Hogan stated she wished to speak to Mr. Byrne that day. He stated Mr. Byrne did not respond to him that day.

75.    Ms. Hogan's pain continued to increase. Her physical therapist prescribed walking and stretching for five to ten minutes every two hours.

76.    On or about September 27, 2018, Ms. Hogan spoke to Ms. Lantigua regarding her physical therapist's recommendation that Ms. Hogan get up and walk for five to ten minutes every two hours. She stated Ms. Hogan could walk up to the units and file the care plans she had just completed. This aggravated Ms. Hogan's condition.

### *The Pretextual Reason for Her Suspension & Termination*

77.    Ms. Hogan learned that the Hubbardston Swinging Seniors were willing to perform for Defendants residents. Ms. Hogan thought this would be great for a new resident who was having trouble adjusting and was a member of that group. Ms. Hogan also thought the other residents would appreciate the performance. Ms. Hogan scheduled them to come in on June 26, 2018 at 2:30 p.m.

78.    As a result, Ms. Hogan needed to cancel Cookies and Bingo, which was scheduled for 2 p.m.

79.    Defendant Bonilla called Ms. Hogan to his office and stated a resident complained that we were cancelling Bingo. Ms. Hogan arranged for Activity Assistant Kevin Joyce to facilitate Bingo at 4 p.m.

### *Suspension*

80.    On or about September 28, 2018, Ms. Hogan stopped Defendant Bonilla in the hall. She advised him that her pain level had increased and asked whether she would need note to adhere to her physical therapist's recommendation that she take a break every two hours to walk and stretch. He stated a note was a good idea, but to confirm with Ms. Mason.

12

Ms. Hogan told him she had an appointment to meet with her doctor on October 1, 2018 for an update. Defendant Bonilla said that while Ms. Hogan was there, he wanted to go over something with him, and called Mr. Nasiatka into his office, where he presented Ms. Hogan with a Notice of Suspension without pay. Ms. Hogan refused to sign it or write a response.

81. The suspension pending investigation form was drafted September 28, 2018.

82. Defendant Bonilla told Ms. Hogan to leave immediately and turn in her keys. Defendant Bonilla stated the investigation should be completed in two weeks. Defendant Bonilla again asked for a written statement. Ms. Hogan said she would think about it, possibly consult an attorney and email her response.

83. On or about October 1, 2018, Ms. Hogan had an appointment with Dr. Katzen and he put her out on Workers' Compensation.

84. On or about October 5, 2018, Ms. Hogan submitted an email response regarding her Suspension.

85. On or about October 5, 2018, Ms. Hogan received a call from Defendant Bonilla, requesting a meeting to discuss her suspension.

### *Termination*

86. On or about October 10, 2018, Defendant Bonilla and Mr. Nasiatka met with Ms. Hogan to discuss the suspension. Defendant terminated Ms. Hogan's employment. Ms. Hogan asked to speak to Ms. Abare.

87. Ms. Hogan spoke to Ms. Abare and specifically requested payment for her accrued vacation time and three bereavement days.

88. Ms. Abare stated that Defendants will only pay out a percentage of Ms. Hogan's accumulated paid time off based on time Ms. Hogan had worked at the facility.

89.  Ms. Abare stated this was 38%. Ms. Hogan had 179.03 hours of accumulated paid time

off and three Bereavement leave days due to the death of her Mother. Ms. Hogan was

told at the time of her Mother's death by Ms. Abare, and Dawn Mason, Business Office

Manager that she could save those days until the time her family was planning on

services for her Mother in October of 2018. This was also approved by Alain Bernard,

Regional CEO and acting Interim Executive Director. Ms. Hogan also had paid time off

requests completed and approved for these days. Ms. Abare said she would look into the

matter. Ms. Hogan reiterated this request to Defendant Bonilla. Ms. Hogan has not been

contacted by Defendants or paid for this time. Ms. Hogan's hourly rate was $28.92 per

hour $5,182.46, she was only paid $1,967.72 for 68.04; $3,214.74 hours. Ms. Hogan was

later paid for the bereavement pay.

90.  It is the policy and practice of Defendants to only pay out only a portion of accrued PTO

upon termination. They only pay out the "vacation" portion of earned time. Payment is

based on years of service and will be paid out at 38% for 1-5 years of employment; 48%

for 6-10 years of employment; and 55% of ten or more years.

91.  Defendant Bonilla followed Ms. Hogan while she collected her personal belongings.

When Defendant Bonilla left for a meeting, he instructed Mark Mattson, Director of

Environmental Services to watch Ms. Hogan exit and escort her off premises.

92.  On or about November 13, 2018, the insurer terminated Ms. Hogan's Workers'

Compensation benefits it had been paying without prejudice.

### *The Defendants' Motivation*

93.  The ostensible reason for the Plaintiff's dismissal was pretextual.

94.  The Defendants' conduct, as more particularly set forth above, was willful and knowing.

95.     The Defendants' conduct, as more particularly set forth above, was intended to and did harm the Plaintiff.

96.     The Defendants' conduct, as more particularly set forth above, has caused the Plaintiff to suffer emotional distress, and continues to do so.

97.     The Defendants' conduct, as more particularly set forth above, was made with the knowledge and intent to violate state and federal law.

98.     The Defendants' conduct, as more particularly set forth above, was carried out with malice.

99.     The Defendants' conduct, as more particularly set forth above, was outrageous and egregious, and warrants condemnation and deterrence.

### COUNT I: Violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. Against Defendant Highlands/Life Care Centers of America

100.    Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 99 and incorporates them by reference herein.

101.    Defendant Highlands is an employer under the FMLA, 29 U.S.C. § 2611(4), and subject to its provisions.

102.    The Plaintiff's conditions of suffered a work injury that resulted in Chondromalacia of the right patella and patellar tendinitis of the right knee, which resulted in a permanent limp and frequent pain, which resulted in a period of incapacity followed by continuing treatment constituted a serious health condition pursuant to 29 U.S.C. § 2611(11).

103.    The Plaintiff's ongoing conditions of anxiety and depression, all of which at times necessitated absences from work, constituted one or more serious health conditions pursuant to 29 U.S.C. § 2611(11).

104.    As outlined above, Defendant Highlands knew or should have known that Ms. Hogan has a qualifying condition under the FMLA.

105.    Under the FMLA, 29 U.S.C. § 2612, Plaintiff was entitled to take up to 12 weeks of intermittent leave during any 12-month period.

106.    Defendant Highlands had a duty to refrain from interfering with, restraining, and/or denying the exercise or the attempt to exercise Plaintiff's rights under 29 U.S.C. §§ 2611, *et seq*.

107.    As more particularly described above, Defendant Highlands interfered with the Plaintiff's exercise of her rights under FMLA.

108.    The interference described above violated the Plaintiff's rights under the FMLA.

109.    Plaintiff suffered damages as a result of these unlawful acts.

110.    Defendant Highlands is liable to the Plaintiff for violating her rights under the FMLA, 29 U.S.C.§ 2612.

**COUNT II: Retaliation for Use of the Family and Medical Leave Act,
29 U.S.C. § 2601, et seq. Against Defendant Highlands/Life Care Centers of America**

111.    Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 110 and incorporates them by reference herein.

112.    Defendant Highlands was aware of Plaintiff's protected activities.

113.    By retaliating against Plaintiff in divers ways as more particularly described above, Defendant Highlands retaliated against Plaintiff for exercising her rights under the FMLA.

114.    Retaliation for the exercise of rights protected by the FMLA is a violation of law. 29 U.S.C. § 2615(a).

115.    Plaintiff suffered damages as a result of this unlawful conduct.

116.    The conduct of Defendant Highlands in retaliating against the Plaintiff for the exercise of her rights under FMLA was willful and intentional.

117.    Defendant Highlands is liable to the Plaintiff for violating her rights under the FMLA, 29 U.S.C.§ 2612.

**COUNT III: Violation of Americans with Disabilities Act,
42 U.S.C. § 12101, et seq.: Failure to Accommodate
Against Defendant Highlands/Life Care Centers of America**

118.    Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 117 and incorporates them by reference herein.

119.    Plaintiff was, at all times, a qualified individual with a disability who was able to perform the essential functions of her position with or without accommodation.

120.    As noted above, Plaintiff suffered a work injury that resulted in Chondromalacia of the right patella and patellar tendinitis of the right knee, which resulted in a permanent limp and frequent pain. These impairments at times necessitated absences from work, required ongoing medical treatment and substantially impaired her ability to walk and/or work (among other major life activities). These conditions rise to the level of a handicap/disability and/or serious medical condition under the law.

121.    Alternatively, Defendants viewed her as having a handicap and disability under the law.

122.    Plaintiff's condition constituted a disability under the ADA, as amended, 42 U.S.C. § 12101, et seq.

123.    Defendant Highlands had notice of Ms. Hogan's disabilities and need for accommodation.

124.    Defendant Highlands had a duty to provide Plaintiff with reasonable accommodations that did not impose an undue hardship.

125.    On multiple occasions, Plaintiff made requests for reasonable accommodation, including requesting time off, lifting and other work restrictions.

126.    These accommodations were reasonable and would not have caused Defendant Highlands undue hardship.

127.    Further, Defendant Highlands failed to engage with Plaintiff in an interactive dialogue in good faith.

128.    The Plaintiff has suffered damages as a result of Defendant Highlands's violations of law set forth above.

129.    Defendant Highlands is liable for the violations of law set forth above.

**COUNT VI: Violation of Americans with Disabilities Act,**
**42 U.S.C. § 12101. et seq.: Discrimination and Retaliation**
**Against Defendant Highland/Life Care Centers of America**

130.    Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 129 and incorporates them by reference herein.

131.    Plaintiff was, at all times, a qualified disabled individual with a handicap who was able to perform the essential functions of her position with or without accommodation.

132.    Defendant Highlands discriminated against the Plaintiff on account of her disability by, *inter alia*, ignoring her, demoting her, unfairly reprimanding her, moving her office, refusing to let her meet with residents, replacing her, suspending her employment and setting her up for termination.

133.    Defendant Highlands had notice of the Plaintiff's disability and of her protected activities. The unlawful conduct of Defendant Highlands, described herein, was motivated by Plaintiff's disability and her protected activities.

134.   In the alternative, Defendant Highlands regarded the Plaintiff as having a disability and discriminated against her on account of its perception that the Plaintiff's condition constituted a disability as defined by the ADA, as amended.

135.   Defendant Highlands had a duty to refrain from discriminating against the Plaintiff on account of her disability or perceived disability

136.   The Plaintiff suffered damages as a result of the legal violations of Defendant Highlands.

137.   Defendant Highlands is liable for the violations of law set forth above.

138.   The discriminatory acts of Defendant Highlands against the Plaintiff, as more particularly described above, were made with malice or with reckless indifference to Ms. Hogan's federally protected rights.

### COUNT V: Violation of Mass. Gen. Laws c. 151B, § 4(16), Handicap Discrimination Against Defendant Highlands/Life Care Centers of America

139.   Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 138 and incorporates them by reference herein.

140.   Plaintiff was, at all times, a qualified individual with a handicap who was able to perform the essential functions of her position with or without accommodation.

141.   Plaintiff's condition(s) constituted a handicap(s) under Mass. Gen. Laws c. 151B, § 4(16).

142.   Defendant Highlands discriminated against the Plaintiff on account of her handicap by, *inter alia*, ignoring her; ignoring her, demoting her, unfairly reprimanding her, moving her office, refusing to let her meet with residents, replacing her, suspending her employment and setting her up for termination.

143.   The Defendants' harassment and constructive discharge of Plaintiff were motivated by Plaintiff's disability and protected activities.

144.    In the alternative, Defendant Highlands regarded the Plaintiff as having a handicap or impairment as defined by Mass. Gen. Laws c. 151B, § 1(17), and discriminated against her on the basis of that perception.

145.    Defendant Highlands had a duty to refrain from discriminating against the Plaintiff on account of her handicap or on account of a perceived handicap.

146.    Defendant Highlands had a duty to provide Plaintiff with reasonable accommodations that did not impose an undue hardship.

147.    As noted above, on multiple occasions Defendant Highlands denied or unreasonable delayed Plaintiff's requests for reasonable accommodation.

148.    These accommodations were reasonable and would not have caused Defendant Highlands undue hardship.

149.    Further, Defendant Highlands failed to engage with Plaintiff in an interactive dialogue in good faith.

150.    The Plaintiff has suffered damages from the violations of law set forth above.

151.    Defendant Highlands is liable for the violations of law set forth above.

152.    The discriminatory acts of Defendant Highlands against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

**COUNT VI: Violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq. – Disparate Treatment Against Defendant Highlands/Life Care Centers of America**

153.    Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 152 and incorporates them by reference herein.

154.   By treating Ms. Hogan differently than the younger employees and by terminating Ms. Hogan based on her age, Defendant Highlands has treated Ms. Hogan differently based on her age, thereby discriminating against her.

155.   Ms. Hogan has been discriminated against by the Defendant Highlands on account of her protected status and protected activities, specifically her age.

156.   Defendant's actions have unreasonably interfered with Mrs. Hogan's ability to perform her job and ultimately resulted in her inexcusable termination.

157.   As such, the actions of the Defendant resulted in violations of the ADEA and/or other applicable employment-related laws and/or regulations under a theory of disparate treatment.

158.   As a result of Defendants actions, Ms. Hogan has suffered damages.

**COUNT VII: Violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq. – Interference, Against Defendant Highlands/Life Care Centers of America**

159.   Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 158 and incorporates them by reference herein.

160.   By treating Ms. Hogan differently based on her age, Defendants have knowingly interfered with her right to be free from discrimination in the terms, conditions, and privileges of employment.

161.   As an employee of Defendants, Ms. Hogan had the right to a fair determination of her status without any discriminatory animus.

162.   Through the actions outlined above, Defendants intentionally interfered with the employment rights of Ms. Hogan and those similarly situated, and they were not free from discrimination as the law requires.

163. As such, the actions of the Defendant resulted in violations of the ADEA and/or other applicable employment-related laws and/or regulations under a theory of unlawful interference as applied through disparate treatment.

164. As a result of Defendant's actions, Ms. Hogan has suffered damages.

## COUNT VIII: Violation of Mass. Gen. Laws c. 151B, § 4(1B), Age Discrimination Against Defendant Highlands/Life Care Centers of America

165. Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 164 and incorporates them by reference herein.

166. Plaintiff is 63 years old and performed her job in at an acceptable level.

167. Defendant terminated her employment and sought to fill her position.

168. By treating Ms. Hogan differently, as outlined above, than the younger employees and by terminating Ms. Hogan based on her age, Defendant Highlands has treated Mrs. Hogan differently based on her age, thereby discriminating against her.

169. Defendant Highlands has discriminated against Ms. Hogan based upon age. Defendant's actions have unreasonably interfered with Ms. Hogan's ability to perform her job and ultimately resulted in her inexcusable termination.

170. As such, the actions of the Defendant resulted in violations of M.G.L. c. 151B and/or other applicable employment-related laws and/or regulations under a theory of disparate treatment.

171. As a result of Defendant Highlands's actions, Ms. Hogan has suffered damages.

## COUNT IX: Violation of Mass. Gen. Laws c. 151B, § 4(4), Retaliation Against All Defendants

172. Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 171 and incorporates them by reference herein.

173.  As outlined above, the Defendants retaliated and discriminated against Plaintiff, including terminating her employment, because she opposed the Defendants' violation of her rights under Mass. Gen. Laws c. 151B, § 4.

174.  The Plaintiff has suffered damages from the violations of law set forth above.

175.  The Defendants are liable for the violations of law set forth above.

176.  The Defendants' acts of discrimination against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

### COUNT X: Violation of Mass. Gen. Laws c. 151B, §4(4A), Coercion, Intimidation, Interference and Threats Against Defendant Bonilla

177.  Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 176 and incorporates them by reference herein.

178.  As outlined above, Defendant Bonilla coerced, intimidated, and threatened Plaintiff for, and interfered with Plaintiff's exercise and enjoyment of her rights to a reasonable accommodation and to be free from discrimination and retaliation.

179.  The Plaintiff has suffered damages from the violations of law set forth above.

180.  Defendant Bonilla is liable for the violations of law set forth above.

181.  Defendant Bonilla's acts of discrimination against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

### COUNT XI: Violation of Mass. Gen. Laws c. 151B, § 4(5), Aiding and Abetting Against Defendant Bonilla

182.  Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 181 and incorporates them by reference herein.

183.  As outlined above, Defendant Bonilla aided, abetted, incited, compelled or coerced the doing of acts forbidden under Mass. Gen. Laws c. 151B.

184.  The Plaintiff has suffered damages from the violations of law set forth above.

185. Defendant Bonilla is liable for the violations of law set forth above.

186. Defendant Bonilla's acts of discrimination against the Plaintiff, as more particularly described above, were outrageous or egregious and warrant punishment.

## COUNT XII: Violation of Mass. Gen. Laws c. 152, § 75B(2), Retaliation for Workers' Compensation Against Defendant Highlands/Life Care Centers of America

187. Plaintiff reiterates the allegations of the foregoing paragraphs 1 through 186 and incorporates them by reference herein.

188. Defendants were aware that Plaintiff engaged in activity protected by the Workers' Compensation Act.

189. As outlined above, the Defendants terminated and discriminated against Plaintiff because she engaged in activity protected by the Workers' Compensation Act.

190. The Plaintiff has suffered damages from the violations of law set forth above.

191. The Defendants are liable for the violations of law set forth above.

WHEREFORE, Plaintiff prays the court to:

   a. Adjudge Defendant Highlands/Life Care Centers of America liable for the violations of law set forth in Count I.

   b. Adjudge Defendant Highlands/Life Care Centers of America liable for the violations of law set forth in Count II.

   c. Adjudge Defendant Highlands/Life Care Centers of America liable for the violations of law set forth in Count III.

   d. Adjudge Defendant Highlands/Life Care Centers of America liable for the violations of law set forth in Count IV.

   e. Adjudge the Defendant Highlands/Life Care Centers of America liable for the violations of law set forth in Count V.

f.   Adjudge the Defendant Highlands/Life Care Centers of America liable for the violations of law set forth in Count VI.

g.   Adjudge the Defendant Highlands/Life Care Centers of America liable for the violations of law set forth in Count VII.

h.   Adjudge the Defendant Highlands/Life Care Centers of America liable for the violations of law set forth in Count VIII.

i.   Adjudge the Defendants liable for the violations of law set forth in Count IX.

j.   Adjudge Defendant Bonilla liable for the violations of law set forth in Count X.

k.   Adjudge Defendant Bonilla liable for the violations of law set forth in Count XI.

l.   Adjudge Defendant Highlands/Life Care Centers of America liable for the violations of law set forth in Count XII.

m.   Award the Plaintiff lost wages, benefits and other economic losses according to law.

n.   Award the Plaintiff damages for emotional pain and suffering according to law.

o.   Award the Plaintiff liquidated damages, as provided by law.

p.   Award the Plaintiff punitive damages, as provided by law.

q.   Award the Plaintiff pre- and post-judgement interest, according to law.

r.   Award the Plaintiff her costs and reasonable attorneys' fees, as provided by law.

s.   Grant the Plaintiff such additional relief, including equitable relief, as the court deems reasonable and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on her claims.

Respectfully submitted,
LINDA HOGAN,
By her attorney,

Dated: December 3, 2019               /s/ Melissa A. Pomfred_____
Melissa Pomfred (BBO# 665682)
melissa@pomfredlaw.com
Pomfred Law Offices, PLLC
5 East Street
Franklin, MA 02038
P: (508) 321-7859/F: (508) 321-9333